This is 19-2153 United States v. Mercado-Gracia and for the appellant is Ms. Rivas. You may proceed when you're ready. May it please the Court, Your Honor. Mr. Mercado-Gracia's right to be free from unlawful search and seizure was violated when Officer Wood extended the stop of a traffic ticket beyond the time required to issue that ticket. He extended that time without reasonable suspicion and without consent. Your Honor, what happened here in this case was that the officer gives Mr. Mercado-Gracia his ticket and five seconds later says, excuse me, Aaron. He doesn't ask him any questions. He says, excuse me, Aaron. Mr. Mercado takes approximately three or four steps towards his car and returns back. When he is already on his way back and submitted to the authority of Officer Wood, then the officer asks, is it okay to ask you some questions? At that point, Officer Wood asks persistent and intimate questions of Mr. Mercado. Mr. Mercado constantly protests. He asks regarding, well, I thought this was just about the ticket. The answers are similar to, why didn't you bring your own car? Who has your car? Where are you going? Where are you staying? How will you pay for your stay? Mr. Mercado becomes nervous because he intends to travel to Albuquerque with the intent to be unfaithful to his partner. In fact, the Officer Wood recognizes that that's a source of his concern. He says, no, I'm not going to tell your wife. I'm not going to tell her. Regarding questions regarding the car, he does ask him, do you have information about the owner of the car? He readily responds. Your Honor, we asked that. He was very confused, wasn't he, about the ownership of the car and the connection between the title and the ownership. Didn't he have some confusion about all of that and the relationship of that person to him or his girlfriend back in Phoenix? Your Honor, I would indicate that the court can see from the record, from the video recording of the incident, that it does appear that Mr. Mercado is not an English, native English speaker. However, that alone does not create reasonable suspicion. Borrowing a car from the husband of a relative, not his relative, does not raise the issue to reasonable suspicion. Your Honor, we ask the court consider that the Wood case, that just because things maybe don't make sense to the police officer, does not indicate or does not metamorphose those facts to reasonable suspicion. In that case, the fact that he gave three, you know, he's 22 miles outside of Albuquerque and he gives the officer three different explanations during the initial encounter of why he's coming to Albuquerque. First, it's for his remodeling business that he wants to drive around and then he says, you know, that he wants to meet this woman. And what about the fact that he gives three different explanations? Why doesn't that trigger reasonable suspicion? Your Honor, again, I think that I'd ask the court consider that English is not Mr. Mercado-Gracia's first language and I don't think that those three answers are inconsistent. It is true that Mr. Mercado-Gracia had his own business. It is true that he was traveling for a visit, right? That could be a linguistical difference in a person. While he said, I'm just driving around, I think that it's clear that his intention was that he was going on a trip. Linguistically, I think that might have caused that concern. So, it may have been totally innocent and it may have been because he wasn't a native English-speaking person, but don't we evaluate the objective reasonableness of the suspicion from the officer's viewpoint? And why wouldn't it have been reasonable for the officer to say, why are you coming to Albuquerque? It's 22 miles outside of it. And he says, he's coming there because of his business and then it turns out that it has nothing to do with it. It's this illicit affair. But before that, he says that he wants to just drive around. So, even if it's completely benign, why was it unreasonable from the officer's standpoint to have this suspicion? Your Honor, I would ask the court consider that although his explanations, and again, I would ask the court consider that these explanations are not inconsistent. However, even if the court were to find that, that doesn't indicate a crime. It doesn't raise to the level of reasonable suspicion that a crime is happening or that he's in the middle of committing a crime as he travels to the city of Albuquerque, Your Honor. I'm going to ask the U.S. attorney in a minute, but I'd just like a metaphysical answer from you. When an officer has talked to the person and says, you're free to leave, gives him his license back and he goes back to the car and then calls him back for further questioning, and then decides either to arrest him or have the dog sniff, like was the case here. Does the officer need to point to additional information during the second interview that authorizes the dog sniff? That is the fact that he released him the first time. Is that evidence that at that point there was not enough? And then do we have to look for some new information, which I frankly don't really see very much new information that was acquired, but is it necessary in your opinion for the officer to find new information to support the further activity of a dog sniff when the officer apparently did not determine that that evidence was sufficient when he released him in the first place? Just as a legal proposition, we'll talk to the U.S. attorney about the facts, but do you think there is additional evidence needed, material evidence or not? Your Honor, I would, yes, I would think that in order for the officer to continue the search, continue the encounter with the person, that the officer needs, the officer at that point, whether it's new or not new, at that point the officer does need reasonable suspicion. Oh he does, of course, but you're saying whether new or not, so I think your answer is no. He didn't need additional evidence. He could simply have rethought his first decision and decided maybe I let the guy go mistakenly and I'm going to revisit it, but I think you're saying no, the government does not need to prove additional material evidence during the second discussion in order to proceed with the dog search. Am I correct or incorrect in your statement? No, Your Honor. Well, when he's first pulled over, he's got reasonable suspicion to issue the ticket and so there is, does need to be new evidence of something else. His investigation into the ticket, issuing that ticket is complete. Why does it have to be new evidence? Could it be simply that he rethought the evidence he already had and said, you know, I guess there is enough to do it or do you, I mean, this is strictly a legal question because I'm not going to argue facts against yourself. We'll ask the government to address that, but legally, does he need additional evidence or could he simply re-evaluate the evidence he already had when he let the guy go in the first place? Your Honor, I suppose I would, I still insist that the, in order to extend that stop, the officer needs a reasonable suspicion. Whatever happens, I apologize, Your Honor. That's fine. Thank you. Whatever happens in the officer's mind, and again, in our specific case, we asked the court to find that there was not a reasonable suspicion. The trip was unusual, but other than that, those facts do not support the reasonable suspicion. As I was mentioning, this court in Wood is very similar to our case. In that case, the court found no reasonable suspicion where the travel plans were unusual, where even in that case, there was an error in identifying the city where the car had been rented. There were fast food wrappers in the vehicle, open maps, extreme nervousness. Even in that case, the defendant in that case, Wood, had prior convictions for narcotics, and yet this court found was not a reasonable suspicion, and I think that even in that case, there might have been possibly, it might have been more persuasive, and even there, that was not persuasive enough to find in this case, the facts that the government relies on that the trip was unusual and he's driving for Phoenix really have little weight. One other factor that the government looks to is the nervousness and possible shaking. The court can see from the record that this took place in March. March is cold and windy. The court can see from the video recording that it was windy. It was difficult for Mr. Mercado and Officer Wood to hear each other. I understand the court is in Denver, but at least here in New Mexico, it's pretty common knowledge that New Mexico is a much colder temperature than Arizona, and so we asked... Can I ask you a quick... I don't want to take your rebuttal. Were you going to stop? No, Your Honor. Okay, well, let me ask you a question. Assuming that you're right about reasonable suspicion, the district judge found that there was consent for the additional questioning, and I realize that you disagree with that, but aren't we limited to evaluating that under clear error? Your Honor, I would ask that consent is a legal... Whether there was consent is a legal evaluation. I'd ask the court consider and evaluate that de novo and not as a clear error. As we indicated, the record is supplemented with the video, and the court can see that Mr. Mercado Gracia merely acquiesced to the claim of authority, similar as in Bumper, returned to Officer Wood when he asked if he could... Excuse me, Aaron, when he returned. Your Honor, I believe that I have only 245 minutes left, and I'd ask to reserve that time for rebuttal. Thank you, Ms. Rivas. Let's hear from the U.S. Attorney, Ms. Walters. You may proceed. Good morning, Your Honors. May it please the Court, Tiffany Walters for the United States. Officer Wood did not unlawfully extend the traffic stop after the citation was issued because the post-citation questions were both consensual and supported by reasonable suspicion. Mercado Gracia voluntarily consented to answering the additional questions. Would you evaluate that de novo or under the clearly erroneous standard? The factual findings would be under a clearly erroneous standard, and any ultimate application of the facts of the law would be de novo. At that time, Officer Wood had returned all of Mr. Mercado Gracia's documents. He had told him that he was free to leave, and he had said, take care. Mr. Mercado Gracia walked back towards the rear of his vehicle, and as he approached the rear of his vehicle, Officer Wood called out and said, excuse me, Aaron, and then as Mercado Gracia returned, he asked, is it okay if I ask you some questions? And he asked this twice. Mercado Gracia did say regarding, but he didn't say no, and he continued to engage with Officer Wood, and he continued to ask, continued to answer the questions that Officer Wood was posing to him. There was nothing about Officer Wood's tone that was overly aggressive or hostile. He was polite and friendly throughout. Can I ask you, what evidence did the officer find during the second questioning that he did not have during the first questioning, which would have supported a dog search after the second questioning, which apparently he decided was not warranted after the first questioning? I think even with the second questioning, you can consider all global evidence, but there was additional evidence. What material additional facts were discovered during that second questioning? Most significantly, it wasn't until the second questioning that Officer Wood discovered that he did not know his final destination in Albuquerque, even though he was only 22 miles outside of the city, and he was going over 90 miles an hour, and that's something that was consistent with Officer Wood's experience with drug traffickers. The couriers may not know exactly where their intended destination is until the last minute, so that was significant. In the first questioning, he was just going to go to Albuquerque to drive around? He did say that in the first questioning, but the fact that he didn't know his destination in the second question, that's not new information. That was what he said the first time, too. Well, I mean, he said he was going to drive around, and then he said he was meeting someone in Albuquerque, so I think in the first conversation, it's not at all clear that he meet this person. It's not until the second conversation that it comes out that, although he's allegedly planning to meet up with this person, he doesn't know where this rendezvous is going to occur, even though he's not too far outside of Albuquerque. In addition to that, Officer Wood asked him about drugs in the vehicle, specifically marijuana, and he responded indirectly, sort of hedged, saying, you know, not that I'm aware of, and Officer Wood found that suspicious, so that was an additional piece. Why would that be suspicious when it's not your vehicle? You're borrowing a vehicle. It doesn't seem to me at all suspicious that you wouldn't know everything that might be in a car that you're borrowing. Well, he responded directly to other types of drugs, but not to marijuana, and I think Officer Wood interpreted this as an attempt to tell a half-truth to avoid possibly concealing information. So, in his experience, that was reflective of non-responsive behavior, again, the same sort of behavior that he'd seen in the initial stop. Also, to circle back to your question, Judge Ebel, about whether or not the evidence needs to be new, that operates under the assumption that the officer subjectively believed at that time that the encounter was consensual, and that's separate and apart from the objective reasonable suspicion test. So, at the moment, Officer Wood was looking at it and saying, okay, yes, I would have let you go. You're free to go, but that doesn't stop this court from looking at the facts that were known to Officer Wood at that point and finding that there was objective, particularized reasons that he had reasonable suspicion at that point, and then, in fact, there was additional evidence or information that came forward on that additional questioning that supported the reasonable suspicion analysis. Well, I understand that this all could be obviated by the issue of consent. Did he affirmatively consent to the dog sniff, or did he just not object when the dog started sniffing? He actually asked Officer Wood as to the dog sniff whether or not he could even do it without his consent, and at that point, with a dog sniff, I don't believe Officer Wood was asking for consent. Officer Wood was, at that point, felt he had reasonable suspicion to conduct an investigative detention for the dog sniff. But he didn't feel he had it when he first gave the person his license back and said, you're free to go, and if that's the case, then I'm still asking, what did he learn the second time? The second set of questions seemed to me largely redundant of the first set. His testimony at that point was that he would have let Mr. Mercado-Gracia go, but that he was very suspicious. So he does not say that he had reasonable suspicion at that point, but he has a level of suspicion that is rising, and then he engages in additional questioning that cements that. But even so, his subjective suspicion doesn't control this court's objective inquiry into whether or not the information that he had, both from that initial encounter and questioning during the initial traffic stop, and that subsequent questioning, which included additional information, such as increased nervousness and the knowledge that he didn't know a specific destination in Albuquerque. So that was the answer I was kind of expecting you to give from the very first, that it doesn't matter why the officer let him go the first time or not, because it's an objective test, not a subjective test. Took quite a while to get there, but is that your position now? That is my position. Okay, thank you. So returning to the question of reasonable suspicion, if we look at what the officer knew at the point of the first encounter, we have Mr. Mercado-Gracias provided both his license in one name, the vehicle registration in another, and the insurance in yet another. He's unable to identify specifically who the vehicle belongs to. First, it's his cousin, and then it's his lady's husband's cousin, and then it's Fabian, but he's unable to provide the last name of this individual who he has apparently a close enough relationship to that he's willing to loan him his vehicle. This is the sort of situation that this court has found supports reasonable suspicion in cases such as Ludwig and Olivares-Campos. In addition, you have the travel plans that your honors have already mentioned, that he's coming to Albuquerque because he owns his own business, but then when asked if he's coming from work, he says, no, I'm just coming to drive around. And then finally, he's coming to meet this woman. Mr. Mercado-Gracia asks us to sort of count all the inconsistencies because of this potential infidelity and any embarrassment he might have as to that. But Officer Wood didn't know that this third reason was the true reason he was coming to Albuquerque, and he had no way to know that he was now telling the truth. Officer Wood knew that he provided three different inconsistent answers, and that was sufficient to support or to go towards reasonable suspicion. What about Ms. Rivas' argument that it's obvious that he's not a native English speaker and that the officer should have taken that into account in evaluating how suspicious the changes were? Maybe he just didn't understand the officer, but your response to that? I'm not sure it's clear from the video that he's not a native English speaker, but there is no evidence apparent in the video that he's having difficulty understanding Officer Wood as opposed to simply providing evasive answers. I mean, he's answering when asked about the length of his trip, where, and then who me, and then how long have I been here, and then finally saying, I don't know how long he's going to be here. It's probably just the weekend. The type of confusion that's reflected on the record isn't necessarily reflective of an inability to understand the English as much as it is an inability to provide direct and responsive answers to the questions. What about the inability to hear? After all, the officer says at one point, I'm having difficulty hearing you, brother. I have a hard of hearing. You're standing on I-40, on the record shows that it's a windy day, and why isn't the, you know, the officer says, well, he's responding to my questions with questions, but on the other hand, maybe it's the same reason that the officer had asked Mr. Mercado to repeat himself. Maybe he was having difficulty hearing him. It's a possible explanation, but the fact that it happened repeatedly kind of suggests that something else was going on. On top of that, it's not just the inability to hear or respond, but the shifting explanations as to travel plans don't reflect an inability to hear. It reflects an inconsistent story as to what's happening. On top of all this, he's coming from Phoenix. He's driving a borrowed car. These are behaviors that Officer Wood is aware that this is consistent with behaviors of drug traffickers. And then on top of that, in the second conversation, he finds that he doesn't know his ultimate destination. He's not able to provide a clear answer as to whether or not he has drugs in the car. He hasn't booked a hotel room. He hasn't brought his credit or debit cards with him, even though he's on a trip, which isn't really consistent with his story about his attempt to hide his trip from his wife, because she knew he was gone. So, regardless of whether or not he had the cards on him or not, that wouldn't provide any additional information to her one way or the other. In addition, Officer Wood notes increasing nervousness and an inability to make eye contact, too, which is sort of a non-verbal cue that something is going on. And at this point, Officer Wood knows about the affair. Mr. Mercado-Gracia discloses it initially in that first questioning and then discusses it further. So, to blame the increased nervousness on the affair isn't really consistent, given that, you know, the cat's out of the bag at this point. He's aware of what's happening, and that doesn't really explain why Mr. Mercado-Gracia continues to be nervous and evasive with questions. If the Court doesn't have any other questions on this stuff, I would just briefly move to addressing the voir dire video. Here, the District Court did not abuse its discretion by declining Mercado-Gracia's request to show an implicit bias video during voir dire. There's nothing about the facts of this case that suggests a reasonable possibility that the jury would have had any sort of racial or ethnic bias. There's nothing, it's a drug case with not an identifiable victim, and then there's no, there's nothing else that would suggest that this would necessarily be necessary in this case. Here, the Court nonetheless provided, did ask a question that Mercado-Gracia approved of to ferret out any potential bias in the jury, and the District Court had discretion as to whether or not to show the video. The video concerned, operated under the So, it's not clear what that would have done at the voir dire stage to ferret out inappropriate bias when the assumption is that this is something that all the jurors in the jury pool would have to some degree or another. Well, I think Ms. Rivas has argued that, if she can speak for herself on that, is that it at least alerts, it makes the implicit biases, and that they would then be able to more fairly adjudicate the facts if they were alerted to the existence of these implicit biases, and then were able to, and then if defense counsel was able to ask questions to make sure that they were aware of those implicit biases, why would that have been, you know, why shouldn't the Court have done that? The Court, in fact, would have discretion if it so choose to do so. The Supreme Court and Rosales-Lopez said that the Court is not required to do so unless there's a reasonable possibility based on the facts of the case that there would be bias, and here there's nothing specific in this case that sets us apart from any other drug case involving an individual of Mexican ancestry. It would basically be creating a presumption, which is exactly what the Supreme Court said, that we shouldn't have in the context of Wadier. Wadier is typically, I'm sorry. I'm just curious, is there any evidence about other courts that have used this video, I guess was developed in Portland? Is there any evidence that it's been widely used or widely not used at all? I believe it has been used in the Western District of Washington. I believe it's been used by some judges in this district, but it's within the discretion of the judge to determine whether or not it'd be appropriate in that given case, and the question isn't whether or not a judge could use it, but whether this judge reversibly erred by not using it in this particular case. I understand. I just was curious. So you think it has been used in the District of New Mexico? Yes, Your Honor. Okay, thank you. If there is no further questions, the United States would ask the Court to affirm. Thank you, Counsel. We have some rebuttal time for Ms. Rivas. Thank you, Your Honor. Your Honor, regarding the difficulty in hearing Officer Wood, I'd also ask the courts to consider that he was on the side of a highway and that this is an interstate. Cars were constantly driving by them, and because it is an interstate, many of them, just viewing the recording earlier today, many of them were semis, so they were very loud and difficult to hear. And, Your Honor, we would still ask the Court to find that just because Officer Wood would not travel without an emergency credit card doesn't make the plans of Mr. Mercado Gracia suspicious of a crime. If he may not have the ability to obtain a credit card, he may have wanted to hide exactly where he was going from his partner in Phoenix. All that we know is that she knew that he was not home that weekend but did not know specifically if he was going to Albuquerque precisely and exactly where he would stay. Using a credit card if he had one to reserve a hotel or motel would be some evidence of that infidelity with his partner. And, Your Honor, we just ask the Court look at these facts and find that these just do not amount, I think the case law and our brief support, that these facts just do not support reasonable suspicion. And, Your Honor, regarding the jury instruction, the Court is correct. I have personally had a case where we did show the implicit bias video to the jury. That really opens up the ability to ask about those biases to alert them. The support that we provided to the Court does indicate that, you know, we are defensive until this video does not discuss racial bias. But it does open that ability to know that we do have these biases. And that really makes it so that we can ask questions. In this particular case, Your Honor, as we included in our original filing, whatever anyone thinks about the political atmosphere at the moment, the statement that's been widely dispersed and disclosed is that, you know, that Mexicans drag traffic. And so that was a question that I would have liked to have been able to delve more into with that video and have the jurors more open to those questions. And I see that my time has expired. Thank you, counsel. We appreciate the arguments and the case will be submitted.